## Hood v. Upper Dublin Township

*William F. Fox*, for plaintiffs.

*Elmer L. Menges*, for defendant.

*Donald A. Gallager*, for intervenors.

KNIGHT, P. J., April 23, 1957.—Appellants own seven acres of land on which they maintain a day camp and a summer school. During the summer they have about 75 children, aged from 2 to 12, as pupils at the day camp. They desire to build a one-story cinder block building approximately 20 x 75 feet, which they would use in connection with the day camp and also as a schoolroom during the winter months. During the winter months they will not have more that 20 scholars. Their premises are situated on a private road known as Orchard Lane. Several other private residences front on Orchard Lane and have the use thereof. Appellants applied to the building inspector for a permit to build the above described building, but the permit was refused. Appellants then appealed to the zoning board of adjustment, but that body affirmed the decision of the building inspector and denied the permit. The appeal to this court followed. No additional evidence was taken before us, but the record taken before the board of adjustment was offered and received in evidence.

The land of appellants is situated in a residential zone under the provisions of article 3, sec. 302, of the Upper Dublin Zoning Ordinance of 1946, in said residential zone:

"A building may be erected and used for any of the following purposes: Educational, religious or philanthropic use excluding hospital, sanitation or correctional institution and including dormitory of educational institution."

Appellants did not seek a special exception or a variance before the board of adjustment; they based their appeal from the decision of the building inspector on the proposition that the building they intended to construct was for an educational purpose and that therefore they were entitled to a permit as a matter of right. We agree with them. The board of adjustment based its decision not on any considerations affecting the public health, safety, morals or welfare, but because they held that the proposed school would put an unfair burden on those who had the use and whose duty it was to maintain the private road. The board in its discussion frankly states that if appellants' ground faced a public road they would have granted the permit.

"Zoning laws are enacted under the police power in the interest of public health, safety and welfare; they have no concern whatever with building or use restrictions contained in instruments of title and which are created merely by private contracts": Michener's Appeal, 382 Pa. 401.

It must be obvious that if a school erected on a lot facing a public road would not affect the public health, safety or welfare, the same school built on a lot facing a private road would not affect the public health, safety and welfare. If the other lot owners facing the private road feel that they have been or would be injured by the school, their remedy lies in a court of equity and not before a board of adjustment.

There is another question in this case. The decision of the zoning board of adjustment was filed on August 21, 1956, and on August 20, 1956, the board of township commissioners passed Ordinance no. 140, which was a complete revision of the Upper Dublin Ordinance of 1946. Article V, sec. 501, of Ordinance 140, under the caption of General Provisions Governing Residential Districts provides:

"SECTION 501. Permitted uses on each lot in AA, A and B Residential Districts:

"3. Any of the following purposes when authorized as a special exception. a. Educational, Religious or philanthropic use, excluding correctional or penal institution. b. Hospital, Sanitarium, Convalescent Home. c. Golf Course and golf house, excluding golf driving range and miniature golf course. d. Public Utility Facility. e. Green House, non-commercial recreational use. f. Day Camp."

It will be seen that the 1956 ordinance amended the 1946 ordinance by requiring a special exception as a requisite for an educational use. It is well established that zoning confers no vested rights in anyone. Zoning ordinances may be changed at any time provided that if a building permit has been issued and the holder thereof has in good faith expended substantial funds relying upon said permit, then the legislative body may not change the zoning law. This is not such a case.

In Aberman, Inc., v. New Kensington, 377 Pa. 520 (1954), it is said:

"In view of the foregoing decisions, it will hardly be denied that a municipality may properly refuse a building permit for a land use repugnant to a pending and later enacted zoning ordinance even though application for the permit is made when the intended use conforms to existing regulations, provided, of course, that no permit has been issued and relied on, *in good faith*, to the substantial detriment of the holder of the permit."

Counsel for appellants seems to concede in his brief that the provisions of Ordinance 140 apply to his clients' land and to this case, for he requests us to treat the case as if coming to us on an appeal from a decision of the board of adjustment refusing to grant

a special exception. We cannot in this way bypass the board or usurp its powers. We cannot assume that the board will refuse to grant a special exception.

And now, April 23, 1957, the record is remanded back to the board of adjustment in order that appellants may have an opportunity to apply for a special exception.